IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SEATTLE/KING COUNTY COALITION ON HOMELESSNESS, a non-profit organization; and CARLO PAZ, <br><br>                Appellants, <br><br> and <br><br> ELIZABETH HALE; and ALEX HALE, <br><br>                Plaintiffs, <br><br>         v. <br><br> CITY OF BURIEN, a municipal corporation, <br><br>                Respondent. | No. 88311-9-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION |

HAZELRIGG, C.J. — Seattle/King County Coalition on Homelessness and three named plaintiffs (collectively, the Coalition) challenged the constitutionality of a section of the Burien Municipal Code that prohibited individuals from camping or storing personal items on public property. After several amendments to the city code during the pendency of the case, both parties moved for summary judgment, and the trial court ultimately granted the City of Burien's motion and dismissed the case. On appeal, the Coalition challenges the dismissal of only one of its constitutional claims and the trial court's ruling on whether it had organizational standing to proceed. The trial court did not err as to either determination, and we affirm.

FACTS

In October 2023, the Burien City Council passed Ordinance 827 that amended the "[u]nlawful [p]ublic [c]amping" provision of the Burien Municipal Code (BMC), section 9.85.150.[1]  BMC 9.85.150, as it existed prior to the October 2023 amendment, defined the misdemeanor offense of unlawful public camping as use of "nonresidential public property . . . as a temporary or permanent dwelling, lodging, residence, or living accommodation," and established certain limited exceptions.  Ordinance 827 modified BMC 9.85.150 as follows:

> A person is guilty of unlawful public camping if that person uses nonresidential public property, as defined in this section, as a temporary or permanent dwelling, lodging, residence, or living accommodation, at any time between [10]7:00 p.m. and 6:00 a.m., except at places set aside, posted, or not explicitly prohibited [and posted] for such purposes by the Burien City Manager or designee, or by permit issued by the Burien City Manager or designee. Camping, dwelling, lodging, residing, or living on nonresidential public property shall not be permitted in Burien except during the times stated immediately above.

(Alterations and emphasis in original.)  Effectively, this amendment limited the places where camping was permitted and reduced the hours during which it was allowed.

In January 2024, the Coalition filed a complaint against the City of Burien that challenged Ordinance 827.  The three named plaintiffs were Elizabeth Hale, Alex Hale, and Carlo Paz, all of whom were identified in the complaint as

---

[1] Throughout the record the parties and the trial court refer to the successive ordinances that continued to amend the BMC as the primary focus of this controversy.  However, we note that each ordinance served only to modify BMC 9.85.150.  Despite the language used by the parties in the trial court and their briefing on appeal, the operative law the Coalition challenged in the trial court is a provision of the code, and not the ordinance itself.  Accordingly, we will distinguish between the code and the ordinances and modify quoted language as appropriate.

"unsheltered resident[s] of Burien."[2] The Coalition presented a variety of constitutional challenges to the amendments implemented by Ordinance 827 and sought a declaratory judgment pursuant to the Uniform Declaratory Judgments Act (UDJA).[3]

The City's answer followed in February and consisted primarily of general denials but included several affirmative defenses as well. The City contended that the Coalition had "failed to state a claim upon which relief [could] be granted," the ordinance and enforcement of the BMC each constituted "a good faith act" consistent with the City's "police powers [under the state constitution] to protect the health, safety, and welfare of the community," which it specifically noted included both "the unhoused and housed," the Coalition lacked "standing to allege some or all of these claims," and the trial court could not provide meaningful relief.

In March 2024, the Burien City Council adopted Ordinance 832 which further amended the BMC to address "misunderstanding or misinterpretations of BMC 9.85.150" as amended by Ordinance 827, "clarify and enhance its efforts to protect Burien residents, businesses, and property and to assist and provide clear guidance for the unhoused." Most relevant here, the amendments contained in Ordinance 832 included a map of areas where camping was prohibited and authorization for the City Manager to prohibit camping in other specific locations. In response to the amendments enacted by Ordinance 832, the Coalition was

---

[2] The parties alternatively refer to these plaintiffs as "unhoused," "homeless," or "unsheltered." Where this fact is relevant and necessary to our analysis, we will use the person-centered phrasing "persons/individuals/community members experiencing homelessness," except when directly quoting the parties.

[3] Ch. 7.24 RCW.

permitted to amend its complaint to address the new expanded authority of the city manager and the map of prohibited camping areas. The amended complaint still sought declaratory relief and offered the following claims, solely under the Washington State Constitution, regarding the constitutionality of the unlawful public camping provision of the BMC:

1. Enforcement of BMC 9.85.150, as amended, would "amount[] to banishment" and, therefore, constituted cruel punishment in violation of article I, section 14;

2. As amended, BMC 9.85.150 unlawfully delegated legislative authority to the city manager;

3. BMC 9.85.150 was facially vague such that it violated the due process protections provided in article I, section 3;

4. The forced removal of individuals that would necessarily result from enforcement of BMC 9.85.150, in addition to the seizure of personal property during sweeps, constituted unlawful seizure in violation of article I, section 7;

5. Exclusion of those unable to access shelter based on intoxication or drug use from using the defense of lack of shelter space availability constituted discrimination against people with disabilities in violation of article I, section 12; and

6. BMC 9.85.150, as amended, violated article I, section 12 because it "den[ied] homeless residents of Burien the right to reside in Burien, in violation of their right to intrastate travel."

(Boldface omitted.) The City filed further answers and affirmative defenses to the amended complaint the following June.

On January 3, 2025, the Coalition moved for summary judgment and, therein, expanded its argument regarding the claimed right to intrastate travel. It contended the "sheer breadth of [BMC 9.85.150, as amended by Ordinance 832,] makes it impossible for an unhoused individual, who must carry their belongings with them (or risk having them stolen or disposed of), to exist or travel through the City without fear of arrest." Burien moved for summary judgment dismissal a few days later, on January 6, and rebutted the Coalition's argument regarding intrastate travel with its assertion that "Burien has broad authority to regulate public lands and protect health by implementing narrowly tailored restrictions on when and where people can camp on public land."[4]

After the parties responded to the summary judgment motions, the City, unsolicited, filed supplemental briefing on mootness because the Burien City Council had further amended BMC 9.85.150 by its enactment of Ordinance 864 on January 28. The City asserted in its supplemental brief that Ordinance 864 "represent[ed] a significant policy change with respect to public camping" following the United States Supreme Court's decision in *City of Grants Pass v. Johnson*, 603 U.S. 520 (2024). It contended that some of the Coalition's challenges, specifically those regarding vagueness and the delegation of legislative authority

---

[4] On January 8, King County moved for authorization to file an amicus brief in support of the Coalition's motion on the grounds that the King County Sheriff's Office (KCSO), "operates the Burien Police Department and provides police services to Burien under an Interlocal Agreement" and KCSO "had substantial concerns about [the] constitutionality" of BMC 9.85.150 based on the enactment of Ordinance 832. The City objected, but the trial court granted King County's motion on January 21 and its amicus brief, which had been submitted with the motion, was accepted.

to the City Manager, were now moot because the relevant language had been completely removed from BMC 9.85.150 by Ordinance 864. The City conceded that the Coalition's causes based on "'cruel punishment inflicted,'" "seizure and removal of property," and "the intrastate right to travel" were not moot and remained. BMC 9.85.150, as amended by Ordinance 864, reads in pertinent part as follows:

(1) Findings and Legislative Purpose.
    (a) City of Burien public property is harmed, and public access to public property is diminished or impeded by camping on public property, public street rights-of-way, or public facilities.
    (b) Camping and unlawful storage on public property disrupts pedestrian and vehicular traffic, businesses, and governmental functions, adding to municipal responsibilities and expenses while detracting from other governmental priorities.
    (c) Based on law enforcement estimates, significant increases in crime, calls-for-service, and adverse impacts occur in or around encampments.
    (d) Allowing camping can result in fewer people who need assistance seeking and obtaining that assistance.
    (e) Burien adopts the ordinances recitals as findings of fact.

(2) Camping and Storage Prohibition.
    It shall be unlawful for any person to camp or store items on public property in Burien at any time.

(3) Limited Law Enforcement Discretion.
    (a) There is no requirement that beds, housing, shelter, or treatment be available, offered, or sought before enforcement of this ordinance; however, law enforcement may offer the same to a person camping on public property, and if the person accepts the offer or agrees to "camp" off of public property, that person may not be arrested under BMC 9.85.150 unless they continue to or insist on unlawfully storing items on public property.
    (b) This provision does not require Burien, its employees, or contractors to provide said services and does not create a right to services for anyone.

(Formatting omitted.)

At a previously scheduled hearing on the day after the City filed its supplemental brief, the trial court inquired as to the Coalition's position in light of the passage of Ordinance 864 and its amendment of the BMC. The Coalition indicated it intended to proceed and could provide additional briefing on mootness. The trial court authorized additional briefing from the Coalition and continued the hearing on summary judgment to a later date. The Coalition's supplemental briefing on mootness followed on February 7, and while it conceded that its claims regarding "unlawful delegation of legislative authority and unconstitutional vagueness" were now moot and voluntarily dismissed them, the Coalition noted its disagreement with the City's "characterization of [its] remaining claims as facial challenges" to the BMC and indicated that it would address that issue in its supplemental briefing on summary judgment.

On February 11, the Coalition filed that supplemental brief in support of summary judgment and clarified its claims in light of the January amendments to the BMC. It conceded "that there are hypothetical applications of the ordinance that would be constitutional" but emphasized that its "as applied challenges, seeking declaratory and injunctive relief" based on the state constitution were "still ripe for review even after the recent amendments." That same day, the City also provided supplemental briefing regarding the January amendments from Ordinance 864. The trial court heard the summary judgment motions on February 14 and asked the Coalition to clarify its organizational standing in relation to the individual plaintiffs named in its amended complaint.

In April, the trial court ordered "additional briefing from the parties with respect to the issue of whether any of the Plaintiffs ha[d] standing to bring an as-applied challenge against Ordinance 864 under article [I], section 14" of the Washington Constitution, cited this court's unpublished opinion in *Kitcheon v. City of Seattle*,[5] and further specified that the parties did not "need to address ripeness or standing related to any other claim." Both parties submitted their supplemental briefs on standing on April 11 as ordered by the court; the Coalition argued that both the individual plaintiffs and organization had standing to pursue an as-applied claim, and the City disagreed and argued *Kitcheon* supported its position.

On May 15, 2025, the trial court entered its 86-page order on summary judgement that set out its reasoning, analyzed the standing of the Coalition and individual plaintiffs, and concluded that only Paz had standing to present an as-applied challenge. Ultimately, the trial court also denied the Coalition's motion for summary judgment on all of its remaining constitutional bases, granted the City's motion, and dismissed the complaint.

The Coalition timely appealed.

ANALYSIS

While the trial court dismissed the Coalition's suit in full, its appeal focuses primarily on its sixth cause of action:[6] that BMC 9.85.150, as amended by the

---

[5] *Kitcheon v. City of Seattle,* No. 85583-2-I (Wash. Ct. App. Dec. 9, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/855832.pdf, *review denied,* 4 Wn.3d 1030 (2025). Pursuant to GR 14.1, we may cite to unpublished opinions as necessary for well-reasoned decisions. *Kitcheon* is cited here solely as a procedural fact of the litigation in the trial court.

[6] While the Coalition presented several distinct constitutional challenges to the ordinance in the trial court, it did not assign error to the dismissal of any of the other bases that remained after voluntary dismissal of the second and third claims based on mootness, other than the one identified here.

various ordinances described, *supra*, violates the privileges and immunities clause of our state constitution, Art. I, § 12, because it "den[ies] homeless residents of Burien the right to reside in Burien, in violation of their right to intrastate travel." (Boldface omitted.)  Toward that end, it asserts that the trial court erred both when it denied its motion for summary judgment and when it granted the City's.  It also contends that the trial court's determination on standing was erroneous, as was an evidentiary ruling regarding declarations the City submitted in support of summary judgment.  We necessarily begin with the question of standing before turning to the propriety of the trial court's resolution of the motions on summary judgment.

I.      Standing

The Coalition contends that the trial judge applied the wrong test to resolve the question of its standing as an organization.  Specifically, it asserts the trial court should have analyzed "organizational standing under the UDJA" but instead "applied the associational standing test from *Riverview* [*Community Group*] *v. Spencer & Livingston*."[7]   In response, the City avers that no member of the Coalition "is an unhoused resident of Burien.  It, therefore, does not have standing to make an as-applied challenge" regarding the constitutionality of BMC 9.85.150 as amended by the ordinances.  We agree with the City.

---

[7] 181 Wn.2d 888, 337 P.3d 1076 (2014).  As it did in the trial court, the Coalition argues for the application of the test articulated in *Freedom Foundation v. Washington State Public Disclosure Commission* to determine its standing as an organization.  No. 84640-0-I (Wash. Ct. App. Apr. 3, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/846400.pdf.

However, *Freedom Foundation* is an unpublished case from this court that addressed standing in the specific procedural context of claims arising under the Administrative Procedure Act (APA), ch. 34.05 RCW.  *See id*. at 5-6.  Critically, the APA has different standing requirements than the UDJA.  *Compare* RCW 34.05.530 (APA standing), *with* RCW 7.24.020 (UDJA standing).

As such, we decline to follow an unpublished opinion that analyzed a different statute with a distinct standard derived from federal law.

"Standing is a question of law that we review de novo." *Wash. State Hous. Fin. Comm'n v. Nat'l Homebuyers Fund, Inc.*, 193 Wn.2d 704, 711, 445 P.3d 533 (2019). "The standing doctrine prohibits a litigant from raising another's legal rights. The kernel of the standing doctrine is that one who is not adversely affected by a statute may not question its validity." *Walker v. Munro*, 124 Wn.2d 402, 419, 879 P.2d 920 (1994). As relevant here, the UDJA grants standing to

> [a] person . . . whose rights, status or other legal relations are affected by a statute [or] municipal ordinance . . . may have determined any question of construction or validity arising under the statute [or] ordinance . . . and obtain a declaration of rights, status or other legal relations thereunder.

RCW 7.24.020. "To establish harm under the UDJA, a party must present a justiciable controversy based on allegations of harm personal to the party that are substantial rather than speculative or abstract." *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 802, 83 P.3d 419 (2004). "We use the common law test for standing to determine whether someone has standing under [the UDJA]." *Bass v. City of Edmonds*, 199 Wn.2d 403, 409, 508 P.3d 172 (2022). Pursuant to this test,

> a person has standing if (1) the interest they seek to protect "is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question" and (2) "the challenged action has caused injury in fact, economic or otherwise, to the party seeking standing."

*Id.* (internal quotation marks omitted) (quoting *Nat'l Homebuyers Fund*, 193 Wn.2d at 711-12). Our state Supreme Court has further held that "[o]rganizations have standing to assert the interests of their members, so long as members of the organization would otherwise have standing to sue, the purpose of the organization

- 10 -

is germane to the issue, and neither the claim nor the relief requires the participation of individual members." *Five Corners Fam. Farmers v. State,* 173 Wn.2d 296, 304, 268 P.3d 892 (2011).

Here, the trial court concluded that the Coalition, as an organization, lacked standing to challenge BMC 9.85.150 "[b]ecause none of their members would suffer an injury in fact by virtue of [its] enforcement." The trial judge further observed that neither the fact that the Coalition's mission is, broadly, "to advocate on behalf of homeless individuals" nor that BMC 9.85.150 as amended "may undercut their efforts, or require their efforts to focus on Burien as opposed to some other jurisdiction" constituted an injury in fact such that standing was established. The trial court limited this ruling to the Coalition as an organization and concluded that, of the three named individual plaintiffs, only Paz had "standing to bring his right to travel and private affairs causes of action because he [was] currently homeless in Burien, and intend[ed] to remain so."[8] The trial court also recognized that "standing is not dispensed in gross," and each plaintiff's standing must be determined as to every surviving claim and form of relief sought before concluding that none of the named plaintiffs had standing as to the "'cruel punishment inflicted' claim."

As a preliminary matter, regarding the Coalition's contention that the trial court improperly applied the "associational" instead of the "organizational" test for

---

[8] As to the other named individual plaintiffs, the Hales, the trial court explained that they "were not homeless in Burien at the time they filed declarations in support of summary judgment" and "[i]t [wa]s undisputed that the Hales [we]re not currently homeless in Burien, or anywhere else." The trial court expressed "serious concerns about whether they have standing to challenge [BMC 9.85.150] because it is purely speculative whether they will ever return to camp or reside on Burien's property."

standing, our state Supreme Court has used these labels interchangeably as they relate to the type of *plaintiff*, not to the substance of the test itself. *See, e.g., Wash. State Nurses Ass'n v. Yakima HMA, LLC*, 196 Wn.2d 409, 415, 469 P.3d 300 (2020); *Five Corners*, 173 Wn.2d at 304.

More to the point, *Five Corners* is instructive here. In that case, our state Supreme Court considered the standing of a group of plaintiffs that included an individual farmer, a citizen group of farmers, an environmental law advocacy group, and an environmentalist organization. *Five Corners,* 173 Wn.2d at 301. The plaintiffs filed a declaratory judgment action regarding certain exemptions for the watering of livestock in a statute that imposed permit requirements for the withdrawal of public groundwater. *Id.* Our state Supreme Court considered the standing of the plaintiffs with the organizational test described, *supra*, alongside the requirements of the UDJA. *Id.* at 302-04. It concluded that the organizational plaintiffs had standing because the individual members had standing to pursue the claims they had asserted through the organizations. *Id.* at 304. The individuals had established that their claims were within the zone of interest protected by the statute because the permitting decisions, and therefore necessarily the question of whether the livestock-watering exemption applied, required consideration of the various competing uses. *Id.* at 304-05. The plaintiffs also presented an injury in fact, as the individuals' use of water from the aquifer would be negatively impacted by its depletion, which could be driven or abated based on the decisions regarding permitting and statutory exceptions. *Id.* at 303. This binding precedent from our state Supreme Court establishes that the organizational or associational standing

test is applicable in the context of an action under the UDJA and, therefore, controls. The Coalition's contention to the contrary is simply incorrect.

Having determined the proper test, we consider the question of the Coalition's standing de novo. *See Nat'l Homebuyers Fund*, 193 Wn.2d at 711. The Coalition described its membership in a declaration from its executive director, who stated that its "organizational membership consists of 50-60 community-based nonprofit organizations that provide a wide range of services to King County residents" but did not assert that any of the Coalition's members were experiencing homelessness in Burien at the time it filed its complaint or that those members were otherwise subject to enforcement of BMC 9.85.150. After the February 14, 2025 hearing, the trial court directed the parties to provide supplemental briefing on the issue of standing solely as to the cruel punishment claim.[9] The Coalition did not present any additional facts in that briefing to support its claim regarding its standing as an organization but instead focused on that of the individual named plaintiffs. In contrast, the City explicitly argued that the Coalition had not presented evidence that its members had been subject to enforcement of BMC 9.85.150 as amended by Ordinance 864.

The Coalition failed to establish that any of the individuals within its membership had interests that were regulated or impacted by the enforcement of BMC 9.85.150. Because the individual members did not have standing to

---

[9] The Coalition also avers that the trial court raised this issue sua sponte. However, this contention is plainly belied by the record as the City expressly asserted, in both its answers to the Coalition's initial complaint and to the amended complaint, that "[p]laintiffs lack standing to allege some or all of these claims."

challenge the constitutionality of BMC 9.85.150 as amended, neither did the Coalition.

Finally, we will not deviate from established standing requirements for the Coalition. We recognize that our Supreme Court has explicitly held that we are permitted to take a "'less rigid and more liberal' approach to standing when necessary to ensure that an issue of substantial public importance does not escape review." *Nat'l Homebuyers Fund*, 193 Wn.2d at 718 (internal quotation marks omitted) (quoting *Grant County*, 150 Wn.2d at 803). However, on this record, no one has been arrested or cited for violating BMC 9.85.150 as amended. We do not diminish the harm individuals experiencing homelessness *could* experience due to the potential future enforcement of the BMC but, without specific facts regarding its enforcement or subsequent punishment, we can consider the application of BMC 9.85.150 only as applied to Paz' "intended actions." *See City of Redmond v. Moore*, 151 Wn.2d 664, 668-69, 91 P.3d 875 (2004). Even if we were to relax standing requirements to consider the Coalition's cruel punishment claim, again, without a record of actual punishment inflicted, any analysis of the Coalition's claim would necessarily be speculative.

The trial court did not err in the test it applied or its conclusion that the Coalition lacked standing as to the various claims it presented.[10] Accordingly, we

---

[10] Our holding that the Coalition lacks organizational standing to challenge BMC 9.85.150 is also dispositive of its assignment of error regarding the consideration of certain evidence at summary judgment. The Coalition avers that the trial court erred when it declined to exclude the declaration of the Burien City Manager and accompanying exhibits, including certain emails, all of which it claimed were hearsay.

In the trial court, the Coalition noted that the City had offered this evidence to justify its amendments to the BMC through the various ordinances. However, Paz' as-applied challenge based on the claimed right to intrastate travel is the only claim remaining after our determination regarding standing, and the disputed evidence is not relevant to that claim.

consider the single constitutional challenge to BMC 9.85.150 preserved for appeal only as applied to plaintiff Paz.

II.      Summary Judgment

The central contention of the Coalition on appeal is that article I, section 12 of our state constitution "guarantees every citizen the fundamental rights of free movement, residence, and equal protection. These rights are secured by the state [p]rivileges and [i]mmunities [c]lause and extend to intrastate travel and residence within Washington's borders." On that basis, it asserts the trial court erred when it granted the City summary judgment after it concluded that our state constitution did not provide such a right. The City responds that "no Washington case has found a 'right to intrastate travel' under our state constitution (as opposed to the federal constitution)."

Summary judgment is governed by CR 56. A motion for summary judgment will be granted by the trial court if the evidence proves "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We "consider all facts and make all reasonable factual inferences in the light most favorable to the nonmoving party." *Scrivener v. Clark College*, 181 Wn.2d 439, 444, 334 P.3d 541 (2012). "We review the grant of a motion for summary judgment de novo." *Cockrum v. C.H. Murphy/Clark-Ullman, Inc.*, 4 Wn.3d 873, 880, 569 P.3d 287 (2025). "We engage in the same inquiry as the trial court." *Schiff v. Liberty Mut. Fire Ins. Co.*, 2 Wn.3d 762, 769, 542 P.3d 1002 (2024).

       A.     Washington Jurisprudence Has Not Recognized Right to Intrastate Travel

As to the substance of the summary judgment determination, article I, section 12 of our state constitution declares, "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." As determined in Part I, *supra*, only Paz' as-applied challenge survived after the trial court's proper conclusion regarding standing. "An as-applied challenge to the constitutional validity of a statute is characterized by a party's allegation that application of the statute in the specific context of the party's actions or intended actions is unconstitutional." *Moore*, 151 Wn.2d at 668-69. "Holding a statute unconstitutional as-applied prohibits future application of the statute in a similar context, but the statute is not totally invalidated." *Id.* at 669. We review questions of constitutional law de novo. *El Centro de la Raza v. State*, 192 Wn.2d 103, 111, 428 P.3d 1143 (2018). The Coalition offers three main cases in support of its argument that the privileges and immunities clause of our state constitution includes a right to "intrastate travel and residence within Washington's borders."

The oldest of those three, *Eggert v. City of Seattle*, considered a Seattle city charter provision that gave an employment preference to those applicants who had resided in the city or, in certain circumstances, the county for at least a year. 81 Wn.2d 840, 505 P.2d 801 (1973). Eggert and other applicants challenged this provision on the basis that it "infringe[d] upon their constitutionally protected right to travel" and also asserted that "the charter provisions further violate[d] the equal

protection clause of the Fourteenth Amendment" to the United States Constitution. *Id.* at 841. Our Supreme Court agreed but relied solely on federal precedent because the plaintiffs had not premised their challenge on the state constitution. *Id.*. As such, and because it only addressed city charter provisions that implicated the free movement of workers, *Eggert* is distinguishable and does not control here. Critically, nowhere in *Eggert* did our Supreme Court recognize a state right to intrastate travel.

The Coalition also offered *Macias v. Department of Labor & Industries*, wherein the Washington State Supreme Court considered the right to travel but in the distinct context of the constitutionality of a workers' compensation statute. 100 Wn.2d 263, 668 P.2d 1278 (1983). There, several migrant seasonal farm workers challenged a statute that excluded them from workers' compensation benefits because of its requirement that agricultural workers earn $150 from a single employer before they could qualify for compensation for workplace injuries. *Id.* at 264-65. The *Macias* plaintiffs argued that "the statute infringe[d] upon their fundamental right to travel" because, as migrant farm workers, their profession required them to "move from farm to farm and state to state to obtain continual employment." *Id.* at 271. The court decided the case based on the application of federal case law but also held that "our state constitution privileges and immunities clause . . . independently supports our conclusion that this provision denies appellants equal protection of the law." *Id.* at 275. However, the court expressly recognized that the plaintiffs moved *between the states* in addition to their travel within Washington, and its decision rested on state constitutional grounds only as

to the equal protection claim. As with *Eggert*, this opinion does not contain any language that recognizes a state constitutional right to intrastate travel; it is entirely speculative as to whether the *Macias* court would have recognized such a right under our state constitution, beyond its acknowledgment of the long-recognized federal right to *inter*state travel. The state constitution is mentioned only in a single conclusory sentence in *Macias*, without accompanying analysis, and more critically, it is factually distinct from the case at bar. Accordingly, *Macias* is inapposite here.

Finally, the Coalition relies on *City of Seattle v. McConahy*, which presented a similar issue to the case at hand; the constitutionality of a city ordinance that allegedly burdened the claimed right to travel within a city. 86 Wn. App. 557, 937 P.2d 1133 (1997). There, Seattle had enacted an ordinance that made it "a civil infraction for any person to sit or lie down on the sidewalk in downtown Seattle and other neighborhood commercial zones between 7 a.m. and 9 p.m.," with certain exceptions. *Id.* at 562. McConahy challenged the ordinance as unconstitutional and specifically contended "that the ordinance impermissibly restrict[ed] her right to travel." *Id.* at 571. This court considered the issue solely under the federal constitution and observed that "[t]raditionally, a violation of the right to travel arises from residency requirements, waiting periods, or additional fees for new state residents to receive basic services." *Id.* The panel in *McConahy* relied on *Eggert* and various federal cases to hold that the right to travel was not implicated by the challenged ordinance. *Id*. at 571-72. However, this court also relied on those federal cases, and the federal constitution, to note that "[s]weeping ordinances

prohibiting eating, sleeping, sitting, or lying down in public may also be so broad that they violate the right to travel if they make it impossible for homeless persons to live within the city." *Id.* at 571. But, while the panel in *McConahy* considered that possibility under federal law, it did not acknowledge a right to intrastate travel stemming from our state constitution, and therefore, it does not support the Coalition's position.

These cases offered by the Coalition primarily rely on federal case law and analyze the right at issue under the federal constitution, which renders them particularly unavailing as the Coalition has explicitly renounced any federal claims. Critically, none of these cases contains a holding that our state constitution provides for a right to intrastate travel, nor could one reasonably be implied from the reasoning or language therein. Further, the only case that does explicitly address our state constitution, *Macias*, does so alongside the federal constitution and simply does not contain sufficient analysis to support the proposition that the Coalition puts forward.

Instead, our analysis of this issue is guided by a recent decision of our state Supreme Court, *Potter v. City of Lacey,* wherein it considered the question of whether our state constitution provides a right to intrastate travel in the context of deciding an as-applied constitutional challenge to a municipal code provision. 3 Wn.3d 328, 550 P.3d 1037 (2024). Lacey had amended its municipal code to bar "people from parking . . . large vehicles and trailers on public lots and streets for more than four hours per day." *Id.* at 330. Potter, who "lived in a 23-foot travel

trailer hitched to his truck," filed a claim against Lacey in Thurston County Superior Court and contended as follows in his complaint:

"By adopting and enforcing laws, policies and customs that make it unlawful for the homeless people living in their vehicles to live in the City of Lacey, the Defendants have deprived the Plaintiff of his right to freedom of travel guaranteed by the Washington Constitution. Defendants have denied Plaintiff his state constitutional right *not* to travel to another city within Washington State and not to live elsewhere in Washington State."

*Id.* at 330, 334. Potter further characterized his claimed right not to travel to another city or live elsewhere in the state as his "'right to reside.'" *Id.* After Lacey successfully removed the case to federal district court and prevailed there, Potter appealed to the Ninth Circuit. *Id.* at 334-35. The Ninth Circuit then certified the following question to our state Supreme Court:

Is the right to intrastate travel in Washington protected under the Washington State Constitution, or other Washington law? If Washington state law protects the right to intrastate travel, does the RV [(recreational vehicle)] Parking Ordinance codified in LMC [(Lacey Municipal Code)] §§ 10.14.020-[.]045 violate Jack Potter's intrastate travel rights?

*Id.* at 330 (alterations in original). Our Supreme Court exercised its discretion to reformulate the question as follows: "'Does the RV Parking Ordinance codified in LMC §§ 10.14.020-.045 violate Jack Potter's claimed Washington State constitutional right to intrastate travel?'" *Id.*

Potter had presented an as-applied challenge, so he asserted "only a very limited and specific right: the right to reside in a 23-foot travel trailer hitched to his truck on public streets and lots for an indefinite period of time." *Id.* at 335. But the court observed, "Potter has presented us with no authority, binding or nonbinding, to support a constitutional right to reside in such a manner." *Id.* at 336. The court

explained that "the City [of Lacey] actually has the constitutional authority to adopt parking laws of general applicability" pursuant to its "police powers to protect health and safety." *Id.*; *see also* WASH. CONST. art. XI, § 11. This includes the authority "'to enact vehicle and traffic regulations which are not in conflict with state laws.'" *Potter*, 3 Wn.3d at 336-37 (quoting *Sandona v. City of Cle Elum*, 37 Wn.2d 831, 836, 226 P.2d 889 (1951)). The court further explained that it had "consistently upheld such health and safety laws of general applicability, including laws that limit driving and parking, against intrastate travel challenges," *id.* at 337, and it concluded,

> Potter has not established that his claimed constitutional right to travel intrastate, or to not travel intrastate, or to reside, protects his preferred method of residing in Lacey: by siting his 23-foot trailer on a public street in violation of generally applicable parking ordinances.

*Id.* at 338. Here, in its order on summary judgment, the trial court concluded that *Potter* did not stand for "the proposition that the Washington Constitution protects the right to intrastate travel." It explained, "In effect, our Supreme Court assumed the right to intrastate travel's existence, without squarely deciding the matter. This is too slender a reed for this [c]ourt to answer a question of such constitutional significance."

In its briefing on appeal, the Coalition asks us to read *Potter* as having "assumed without deciding" that the state constitution provided a right to intrastate travel "but found that it did not apply to the plaintiff in that case because the right did not protect a homeless person's right to reside in any manner they chose." In response, the City correctly notes that Potter had *claimed* the right to intrastate travel, but the court did not recognize that such a right exists. The City also avers

- 21 -

that the court in *Potter* "opted not to squarely answer that question" posed by the Ninth Circuit and, instead, limited its holding to Potter's as-applied challenge. At oral argument before this court, the Coalition characterized *Potter* as a "narrow decision, not a narrowing decision" but ultimately conceded in response to questioning from this panel that *Potter* was decided on an assumed right and did not affirmatively hold that such a right existed.[11] It further asserted that the right could be found in other caselaw it had cited in its briefing; the cases analyzed and distinguished, *supra*.[12]

Although our state Supreme Court addressed only Potter's claimed rights regarding his trailer and the constitutionality of parking laws, the facts of that case parallel those of the case at bar. *Potter* is dispositive and directs that we must first ascertain the exact nature of the right asserted by the plaintiff and then consider the extent to which that right is protected under our case law. The Coalition characterizes the right burdened by BMC 9.85.150 as amended by the ordinances as the "right to travel or reside" and contends in briefing that it protects "the ability of a homeless person to exist at all within the borders of a city." When asked at oral argument before this court about the distinction between the right to travel and the right to reside, the Coalition conceded that the rights were the same but emphasized it was not asserting the right to live in the manner of one's choosing, the contention expressly rejected in *Potter*.[13]

---

[11] Wash. Ct. of Appeals, oral arg., *Seattle/King County Coal. on Homelessness v. City of Burien*, No. 88311-9-I (June 2, 2026), at 4 min., 7 sec., to 5 min. 11 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2026061128/.

[12] *Id.* at 4 min., 36 sec. to 4 min., 59 sec.

[13] *Id.* at 19 min., 14 sec. to 20 min., 30 sec.

B.      As-Applied Challenge to BMC 9.85.150 Fails As Matter of Law

Here, precise understanding of the nature of Paz' challenge is crucial; again, an as-applied challenge "is characterized by a party's allegation that application of the statute in the specific context of the party's actions or intended actions is unconstitutional." *Moore*, 151 Wn.2d at 667-68. The "specific context" was emphasized by our Supreme Court in *Potter* where they interpreted that phrase to result in the assertion of, in the context of an as-applied challenge, "only a very limited and specific right." 3 Wn.3d at 335. In his declaration in support of the Coalition's motion for summary judgment, Paz described both his past and intended future actions that he asserted were impacted by BMC 9.85.150. Paz stated, at the time of his declaration, that he was experiencing homelessness in Burien, had been living in a tent, did not "have anywhere [to sleep] other than the streets in Burien" on some nights, and "would like to remain in Burien" but found it hard to do so "with the constant pressure of complying with [the BMC as amended by] the ordinance." He also described the amenities and services he routinely used in Burien and noted that he occasionally stayed with friends in Burien. "The specific context of [Paz'] actions or intended actions" are the subject of his as-applied challenge on appeal. *See Moore*, 151 Wn.2d at 668. Under *Potter*, we construe this course of action as the activities the Coalition contends are protected by the claimed right to intrastate travel. 3 Wn.3d at 335. Therefore, Paz asserts the right to reside on the streets of Burien, in a tent, and freely move about Burien in order to access the services and amenities that are available to him, free from the enforcement of BMC 9.85.150.

But *Potter* does not protect such activity, nor do the other cases offered by the Coalition, even if they were not otherwise distinguishable. The trial court was correct that our state Supreme Court, in *Potter*, did not unequivocally hold that our state constitution provides for a right to intrastate travel, insofar as it could protect the course of action described in the record before us, and the cases presented by the Coalition do not provide sufficient support for such an undertaking.

The question of the existence of a right to intrastate travel under our state constitution was directly before our state Supreme Court in *Potter*, as were the *Macias* and *Eggert* holdings on which the Coalition relies, but it declined to conclude that such a right existed. It expressly held "Potter has not established that his claimed right to reside inheres in a Washington state constitutional right to intrastate travel or that it protects his preferred method of residing in Lacey." *Id.* at 331. Instead, it resolved the case only by assuming such a right for the purpose of deciding Potter's as-applied challenge. *Id.* In its order that certified the *Potter* question to our state Supreme Court, the Ninth Circuit panel explicitly discussed *Macias* and *Eggert* and noted that "no Washington case has held that a right to intrastate travel exists under Washington state law—to the extent Washington courts have found a right to intrastate travel, they have done so only under the United States Constitution." *Potter v. City of Lacey*, 46 F.4th 787, 792 (9th Cir. 2022). Critically, it so held after Potter expressly relied on *Macias* and *Eggert* in his appeal to the federal panel. *Id.* While the Ninth Circuit interpretation of these cases is only persuasive authority, it is telling that our state Supreme Court did not

reject that conclusion by the Ninth Circuit when it took up the issue in response to the certified question.

*Potter* provides the proper framework for our analysis of Paz' as-applied challenge to BMC 9.85.150 which, as explained *supra*, can be considered only in the specific context of his past and intended course of action. Paz' declaration establishes that his course of action includes remaining in Burien, occasionally sleeping in public places in a tent, traveling across Burien to access available services and amenities, and remaining free from the enforcement of BMC 9.85.150. This course of action is not meaningfully distinct from the one Potter identified in his own declaration; living full-time in a travel trailer attached to his truck that he sometimes parked in private lots and other times on city streets. *Potter,* 3 Wn.3d at 331. Our Supreme Court concluded that while this was Potter's "preferred method of residing" in the city, it did not constitute a protected right. *Id.* at 338. Paz asserts he has the right to remain in public places in Burien and to be free from the restrictions of BMC 9.85.150 as amended by the ordinances described herein, which otherwise operates to prevent him from remaining there indefinitely. However, he fails to establish that that BMC 9.85.150 prevents other actions he described in his declaration, like entering Burien, traveling through Burien to access services and amenities, or staying with friends there. While the Coalition asserts that the City has "passed a law making it impossible for the homeless to live within its borders," it does not explain how BMC 9.85.150 impermissibly precludes Paz' courses of action, beyond his fear of its enforcement. Whether termed a right to intrastate travel or a right to reside, the Washington State

Constitution does not provide a right to remain in public places indefinitely in the manner of one's choice, free from the enforcement of municipal codes that prohibit certain activities in public spaces. The Coalition has not demonstrated otherwise. We will not depart from this controlling precedent.

The trial court did not err when it concluded similarly and granted summary judgment to the City.[14]

Affirmed.

WE CONCUR:

---

[14] Our holding that the City was entitled to summary judgment as a matter of law further obviates reaching the merits of the Coalition's challenge to the trial court's purportedly erroneous evidentiary ruling beyond the separate reasoning set out in note 10, *supra*.